## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

ALISA BADDIS on behalf of R.H., a minor,

      Plaintiff,                  Case No.:
                                          Hon.

v.

WHITE CLOUD PUBLIC SCHOOLS      **COMPLAINT AND DEMAND**
 ED CANNING, JOSEPH GORMAN        **FOR JURY TRIAL**
SARA GORMAN, COURTNEY DOLAN,
and ISAIAH TRICE jointly and severally,

      Defendants.

_____/

VAHDAT WEISMAN LAW
Kara Weisman (P80837)
Attorneys for Plaintiff
17197 N. Laurel Park Dr., Ste 500
Livonia, MI 48152
(734) 469-4994
kara@thevwlaw.com

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

    NOW COMES Plaintiff, ALISA BADDIS, on behalf R.H., a minor, through

her attorneys, VAHDAT WEISMAN LAW, and for her Complaint against

Defendants, hereby states:

### JURISDICTION AND VENUE

1.     Ther action is brought, in part, pursuant to Title IX of the Educational

Amendments of 1972, 20 U.S.C. § 1681, *et. seq.* as more fully set forth herein.

2.     Ther is also an action to redress the deprivation of Plaintiff's Minor

R.H.'s constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

3.    Additionally, Plaintiff seeks redress for Minor R.H.'s injuries, damage, and harm under Michigan state law statutory and common law causes of action, over which this Court has pendant jurisdiction as set forth below.

4.    Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5.    Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

6.    Plaintiff further invokes supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

7.      The claims are cognizable under the United States Constitution, 42 U.S.C. §1983, 20 U.S.C. §1681 *et seq.*, and under Michigan Law.

8.      Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claims occurred.

## PARTIES

9.      Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as though fully stated herein.

10.     Plaintiff, ALISA BADDIS, is the current guardian of R.H.

11.     Plaintiff, ALISA BADDIS, brings this case on behalf of minor R.H., a resident of Newaygo County, Michigan, who at all times relevant, was a student within the White Cloud School District at White Cloud High School (hereinafter "WCHS").

12.     Defendant WHITE CLOUD PUBLIC SCHOOLS (hereinafter "the DISTRICT") is and was at all times relevant, a public school organized and existing under the laws of the state of Michigan. The DISTRICT receives federal financial assistance and therefore is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a).

13.     Defendant JOSEPH GORMAN (hereinafter "J. GORMAN) is a resident of White Cloud, Newaygo County, Michigan at all times relevant to the

claims in this Complaint. Defendant J. GORMAN is liable under State and Federal law for his widespread sexual abuse, harassment and molestation of Plaintiff's Minor, R.H. Defendant J. GORMAN was a teacher at WCHS within the DISTRICT and is being sued in his official and individual capacity.

14.    Defendant, ED CANNING (hereinafter "CANNING"), is a resident of White Cloud, Newaygo County, Michigan at all times relevant to the claims in this Complaint, was an employee of the DISTRICT, and is being sued in his official and individual capacity.

15.    Defendant SARA GORMAN (hereinafter "S. GORMAN") is a resident of White Cloud, Newaygo County, Michigan at all times relevant to the claims in this Complaint. Defendant S. GORMAN is liable under State and Federal law for her widespread sexual abuse and harassment of Plaintiff's Minor, R.H. Defendant S. GORMAN was a teacher with WCHS within the DISTRICT and is being sued in her official and individual capacity.

16.    Defendant, COURTNEY DOLAN (hereinafter "DOLAN"), is a resident of Michigan, was a teacher of WCHS within the DISTRICT and, at all times relevant, was an employee of the DISTRICT, and is being sued in her official and individual capacity.

17.    Defendant, ISAIAH TRICE (hereinafter "TRICE"), is a resident of Michigan, was a teacher of WCHS within the DISTRICT and, at all times relevant,

was an employee of the DISTRICT, and is being sued in his official and individual capacity.

18.    The DISTRICT is vicariously liable for the acts of DEFENDANTS CANNING, DOLAN, TRICE, J. GORMAN and S. GORMAN who, at all times relevant, were acting within the course and scope of their employment within the DISTRICT as teachers and/or employees of WCHS.

## FACTUAL ALLEGATIONS

19.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

20.    Upon information and belief, at all times relevant, Defendant CANNING was employed by the DISTRICT as superintendent and is the supervisor of Defendants S. GORMAN, J. GORMAN, TRICE and DOLAN who are employed at WCHS and/or within the DISTRICT.

21.    Defendant J. GORMAN at all times relevant was employed by the DISTRICT as a teacher and Football Coach at WCHS.

22.    Defendant S. GORMAN at all times relevant was employed by the DISTRICT as a teacher at WCHS.

23.    Defendant TRICE at all times relevant was employed by the DISTRICT as a behavioral-academic interventionist at WCHS.

24.    Defendant DOLAN at all times relevant was employed by the

DISTRICT as a teacher at WCHS.

25.    Plaintiff's Minor, R.H., was a student within the DISTRICT at WCHS during the 2023-2024 school year.

26.    At all times relevant, Defendant CANNING maintained supervisory duties over Defendants DOLAN, TRICE, J. GORMAN and S. GORMAN.

27.    Upon information and belief, Defendant CANNING's duties as superintendent included but were not limited to: creating, maintaining, and upholding policies and procedures for employees within the District, including WCHS, to promote a safe and positive educational environment to its students.

28.    During the 2023-2024 school year, Defendant J. GORMAN and S. GORMAN began grooming Plaintiff's Minor, a 16-year-old minor student.

29.    Due to unforeseen residency issues during the 2023 school year, WCHS teacher Chelsea Webb arranged for Plaintiff's Minor to be placed in the care of J. GORMAN and S. GORMAN.

30.    On or about March 30, 2023, Plaintiff's Minor began residing with Defendants J. GORMAN and S. GORMAN.

31.    Upon information and belief, all Defendants knew that Plaintiff's Minor was living with Defendants J. GORMAN and S. GORMAN.

32.    On or about March 31, 2023, Plaintiff's Minor divulged to Defendant J. GORMAN that she was previously abused by her father.

33.     After learning this information, Defendant J. GORMAN gave Plaintiff's Minor a hug and traced his hands from her back to the side of her breasts.

34.     On or about April 12, 2023, Plaintiff's Minor expressed to Defendant J. GORMAN she had a hard day at school. Defendant J. GORMAN decided to purchase a snickers bar and gave it to Plaintiff's Minor with a note saying, "sorry you had a rough day".

35.     That evening, after Defendant S. GORMAN left Defendant J. GORMAN with Plaintiff's Minor alone, he told her "get up and come here", turned her around and sat her on his lap.

36.     As Plaintiff's Minor sat on Defendant J. GORMAN's lap, his penis became erect and touched Plaintiff Minor's leg.

37.     The following day, Defendant J. GORMAN assured Plaintiff's Minor that "nothing would ever happen under his roof" and that she was "safe".

38.     In April 2023, Defendant J. GORMAN began holding Plaintiff's Minor's hand and cuddling with her.

39.     Defendant S. GORMAN observed Plaintiff's Minor and Defendant J. GORMAN cuddling and said they "looked cute".

40.     On or about April 25, 2023, Defendant J. GORMAN turned on the movie Cinderella and had Plaintiff's Minor sit on his lap.

41.     Defendant J. GORMAN then began cuddling with Plaintiff's Minor,

traced his hand down the outside of her pants, cupped his hand around her vagina, and stated she "looked hot" at her track meet that day.

42.     Plaintiff's Minor pretended to be asleep, but Defendant J. GORMAN moved his hand sideways across her vagina.

43.     On or about April 26, 2023, Plaintiff's Minor confided in Defendant TRICE and revealed she was scared of something happening between her and Defendant J. GORMAN.

44.     Defendant TRICE responded by gaslighting Plaintiff's Minor, stating "not everyone is like her previous abuser," and "just because that happened doesn't mean all men are that way."

45.     After this disclosure, Defendant TRICE approached Defendant J. GORMAN about his interaction with Plaintiff's Minor.

46.     Later that evening, Defendant J. GORMAN apologized for the night before to Plaintiff's Minor and indicated he "didn't mean for it to go the way it did" and that "he just likes doing it to Sara" [Gorman].

47.     Defendant J. GORMAN told Plaintiff's Minor he didn't mean for "it" to be sexual and that it wasn't sexual because that's not what he meant.

48.     Defendant J. GORMAN followed up with Plaintiff's Minor to make sure they were "good" and inquired if she had told anyone.

49.     The following week, Defendant J. GORMAN took Plaintiff's Minor

to the Dollar store to get some snacks. Defendant then told Plaintiff's Minor she could keep the snacks in her room as long as she didn't tell Defendant S. GORMAN and it could be their "first secret".

50.     After stopping at the Dollar Store, Defendant J. GORMAN took Plaintiff's Minor to visit the gravesite of her sister where she became very emotional.

51.     That weekend Defendant J. GORMAN picked Plaintiff's Minor up from her friend's house and began questioning Plaintiff's Minor on whether she told her friend about them.

52.     After arriving back at Defendant J. GORMAN's home, Defendant took Plaintiff's minor on a walk. During this time, Defendant J. GORMAN then began questioning Plaintiff's Minor as to what she told Defendant TRICE.

53.     When Plaintiff's Minor didn't tell him, Defendant J. GORMAN began repeating word for word what she told Defendant TRICE.

54.     Defendant J. GORMAN told Plaintiff's Minor he hated telling her not to say anything but if she did, he "could lose his job" and he wanted to "take care of her" and "be her dad".

55.     Defendant J. GORMAN continued to manipulate Plaintiff's Minor by telling her "nothing that was happening was sexual", "loved [her] like his daughter" and asked if she wanted him to be her father.

56.     On the morning of Mother's Day 2023, Defendant J. GORMAN was

cuddling with Plaintiff's Minor on the couch, cupping her vagina outside her clothing.

57.    Defendant J. GORMAN and Plaintiff's Minor then went upstairs to see Defendant S. GORMAN, and they all cuddled with Plaintiff's Minor in between them.

58.    After a few minutes, Defendant J. GORMAN left the room and Defendant S. GORMAN and Plaintiff's Minor continued cuddling.

59.    Approximately a week later, Defendant S. GORMAN, J. GORMAN and Plaintiff's Minor watched a movie together. When Defendant S. GORMAN left the room, Defendant J. GORMAN moved over to the couch where Plaintiff's Minor was sitting and rested his head on her rear-end.

60.    About five (5) minutes later, Defendant J. GORMAN began tracing his hand under Plaintiff's Minor's pants and touched her vagina.

61.    Defendant J. GORMAN then indicated to Plaintiff's Minor he just wanted to do it because "he likes it".

62.    After a few minutes, Defendant J. GORMAN took his hands out of Plaintiff's Minor's pants and placed his head between her legs, pushing his nose up against her vagina.

63.    Following this encounter, Defendant J. GORMAN retreated upstairs to where Plaintiff's Minor overheard Defendants S. GORMAN and J. GORMAN

arguing. Notably, Plaintiff's Minor heard Defendant J. GORMAN yelling "it's not fucking sexual."

64.     A few days later Defendant J. GORMAN and Plaintiff's Minor were conversing in the living room when he inquired if she had ever "masturbated" or "cummed." Defendant J. GORMAN convinced Plaintiff's Minor to talk to Defendant S. GORMAN about this.

65.     Defendant J. GORMAN then asked Plaintiff's Minor if he could tell her a secret and then told her that Defendant S. GORMAN refers to her vagina as "Priscilla."

66.     Defendant J. GORMAN told Plaintiff's Minor that her "Priscilla" deserves to feel good and that he "could go down on [her] right now and it wouldn't change anything between [them]."

67.     A few days later, Plaintiff's Minor and Defendant J. GORMAN sat outside on the dock wherein he grabbed Plaintiff's Minor's face, kissed her and told her "[J]ust so you know, I'm in love with you, kid."

68.     On or about May 28, 2023, Plaintiff's Minor asked Defendant S. GORMAN to help her pin the front of her dress as her chest was exposed.

69.     Defendant J. GORMAN stood there watching as Defendant S. GORMAN was pinning Plaintiff's Minor's dress near the chest.

70.     Defendant S. GORMAN then yelled at Defendant J. GORMAN for

standing there staring at Plaintiff's Minor's chest.

71.     Later that evening, Plaintiff's Minor returned to the house with her friends. Defendant J. GORMAN asked Plaintiff's Minor for a hug, pulled her on top of him and squeezed her rear-end.

72.     The following weekend, Defendant J. GORMAN approached Plaintiff's Minor in the living room and said he "needed cuddles." When Plaintiff's Minor cuddled him, he cupped his hands around her vagina and began kissing her.

73.     Defendant J. GORMAN then told Plaintiff's minor to "sit on the ground in front of him," and "take off [his] belt," and had Plaintiff's Minor touch his erect penis.

74.     Plaintiff's Minor told him she "didn't know what to do" and instructed her to "move [her] hand up and down."

75.     Plaintiff's Minor began moving her hand and immediately froze and started shaking and crying.

76.     Defendant J. GORMAN then pulled her hand out of his pants, pulled her on top of him, held her, wiped her tears and kissed her on her forehead.

77.     The following day Defendant J. GORMAN and Plaintiff's Minor parked at the White Cloud Junior High staff parking lot where he told her to sit on his lap and began cupping her vagina to the point it hurt Plaintiff's Minor.

78.     Later in time on field day, Defendant S. GORMAN and Plaintiff's

Minor were driving together when they began discussing masturbation.

79.    Defendant S. GORMAN told Plaintiff's Minor how she does it, told her to "move her hand sideways, push kinda hard and to move up and down".

80.    Defendant S. GORMAN then told Plaintiff's Minor she would "look into some sex toys" for her.

81.    A few days after school ended, Defendant J. GORMAN had Plaintiff's Minor get on the floor so he could lay on top of her. Defendant told Plaintiff's Minor that he "had to make sure [she] could fight off a grown man if it ever came down to it".

82.    Defendant J. GORMAN then pinned Plaintiff's Minor to the floor and told her to try and get out- while his penis was touching her vagina.

83.    Despite trying to escape, Plaintiff's Minor was not able to move Defendant J. GORMAN's body off her and had trouble breathing.

84.    Defendant S. GORMAN then came into the room where Defendant J. GORMAN stated that he and Plaintiff's Minor were "just wrestling."

85.    Approximately two weeks later, Defendant S. GORMAN entered Plaintiff Minor's room and pulled out a "pink rabbit dildo" and told her "Merry fucking Christmas."

86.    Defendant J. GORMAN then engaged in conversation with Plaintiff's Minor about masturbation and encouraged her to do it with the "toy" Defendant S.

GORMAN got for her.

87.    Sometime later, Defendant J. GORMAN became paranoid and confronted Plaintiff's Minor inquiring if she called "CPS" and told them that he "was messing with [her]."

88.    When Plaintiff's Minor told Defendant J. GORMAN "none of that was happening" he replied, "we're not going to get Sara [Gorman] involved," gave her a hug and slapped her rear-end.

89.    As summertime approached, Defendant J. GORMAN told Plaintiff's Minor he wanted her to stay in his classroom with him. Plaintiff's Minor told him she would "ask" [her teacher].

90.    Defendant J. GORMAN then reached to touch Plaintiff's Minor and smacked her rear-end.

91.    Plaintiff's Minor proceeded to class, told Defendant DOLAN she wasn't feeling well and asked if she could stay in Defendant J. GORMAN's classroom.

92.    When Plaintiff's Minor returned to Defendant J. GORMAN's classroom, he went through her phone and noticed a picture of her and commented that her "ass looked great in [the] photo."

93.    A few days later, Defendant S. GORMAN disclosed to Plaintiff's Minor that "Tray," a previous minor-student that resided with her and Defendant J.

GORMAN "came on to her" while she was sleeping and kissed her.

94.    Defendant S. GORMAN indicated to Plaintiff's Minor they had to do "family therapy" and "some other stuff."

95.    When Defendant J. GORMAN learned that Defendant S. GORMAN had revealed this information about "Tray" to Plaintiff's Minor, he began crying and stated, "he didn't want to ruin things between [him and Plaintiff's Minor] and he "loved [her] like a daughter and [didn't] want to fail [her] like he did with Tray."

96.    Later that evening, as Defendant S. GORMAN walked down the stairs, she witnessed Defendant J. GORMAN kissing and touching Plaintiff's Minor.

97.    Defendant S. GORMAN then walked back up and down the stairs, fought with Defendant J. GORMAN, and ultimately asked Plaintiff's Minor if she wanted to come sleep with her and Defendant J. GORMAN.

98.    Plaintiff's Minor agreed and Defendant S. GORMAN slept in between Plaintiff's Minor and Defendant J. GORMAN.

99.    Approximately a week later, Defendant J. GORMAN asked if Plaintiff's Minor wanted to sleep with him and Defendant S. GORMAN again.

100.    Plaintiff's Minor climbed into their bed and Defendant J. GORMAN put his hand down her pants.

101.    After returning to school, Plaintiff's Minor told Defendant DOLAN that she had slept in bed with Defendants J. GORMAN and S. GORMAN.

102.    Defendant DOLAN only asked Plaintiff's Minor "why" to which she responded, "I don't know".

103.    On or about September 2, 2023, Plaintiff's Minor again slept in bed with Defendants S. GORMAN and J. GORMAN.

104.    While in bed, Plaintiff's Minor began cuddling with Defendant J. GORMAN and he began touching her vagina.

105.    Plaintiff's Minor began hyperventilating and Defendant S. GORMAN held a paper bag up to her mouth for Plaintiff's Minor to breathe in.

106.    During school hours and in front of other students, Defendant J. GORMAN was observed by other staff kicking female students rear-ends.

107.    During school hours and in front of other students, Defendant J. GORMAN was overheard speaking inappropriately to students about Ms. Fetterly having "cheesy nipples."

108.    Despite Defendant CANNING's knowledge of the factual allegations contained in this complaint, Defendant S. GORMAN remains employed by the DISTRICT as an employee of WCHS.

109.    Upon information and belief, female students had previously complained to WCHS staff that Defendant J. GORMAN was "creepy" and would make them feel uncomfortable.

110.    Upon information and belief, the DISTRICT Defendant did not have

rules or policies that prohibited communications between employees and students that were not related to school activities.

111.    Upon information and belief, the DISTRICT Defendant did not have rules or policies that prohibited employees and students from living together.

112.    Upon information and belief, Defendant DISTRICT did not have rules or policies that prohibited employees and students from spending time together when not related to school activities.

113.    Defendant J. GORMAN'S grooming behavior manipulated Plaintiff's Minor to entrusting him and believe their communications were "normal" and that they had a genuine connection.

114.    Due to her age, inexperience, and other contributing factors, Plaintiff's Minor R.H., was mentally and emotionally incapable of rebuffing, discouraging, or rejecting Defendants S. GORMAN AND J. GORMAN.

115.    Defendants S. GORMAN AND J. GORMAN preyed on Plaintiff's Minor's mental and emotional immaturity.

116.    Defendants DISTRICT, CANNING, TRICE and DOLAN had subjective knowledge that Defendants J. GORMAN and/or S. GORMAN were engaging in an inappropriate and possibly an illegal sexual relationship with Plaintiff's Minor.

117.    Upon information and belief, Defendant CANNING had a duty as a

"mandatory reporter" under state law to report DEFENDANTS S. GORMAN AND J. GORMAN's illegal and inappropriate conduct to the appropriate authorities and/or law enforcement.

118.    Defendants DOLAN and TRICE failed to act by reporting Defendant S. GORMAN AND J. GORMAN's illegal and inappropriate conduct to the DISTRICT, administration and/or any law enforcement agency or official.

119.    The failure to act by Defendants allowed Defendants S. GORMAN AND J. GORMAN to continue the sexual assault of Plaintiff's Minor.

120.    Plaintiff's Minor, R.H. suffered and continues to suffer harm and damages as a proximate result of Defendants' wrongful conduct, including but not limited to:

     a.  Physical pain and suffering;

     b.  Emotional and mental pain and suffering;

     c.  Physical manifestations of emotional distress;

     d.  Extreme fear, fright, and shock;

     e.  Complex post-traumatic stress;

     f.  Depression and anxiety;

     g.  Humiliation, embarrassment, shame, and guilt;

     h.  Decreased self-confidence;

     i.  Self-harm;

j.  Other past, present, and future noneconomic damages,

k.  Past, present, and future economic damages; and

l.  All other damages that become known during litigation.

## The DISTRICT's Culture, Policies, Practices, and Customs Authorized and Permitted Inappropriate, Unsupervised Relationships and Contact with Students

121.    While Defendants S. GORMAN AND J. GORMAN were working for the DISTRICT Defendants as teachers, there existed a culture within the DISTRICT that permitted its staff/employees to have inappropriate, unsupervised relationships and contact with minor students under circumstances where sexual abuse was likely to, did, and should have been known to occur.

122.    The DISTRICT Defendants were all aware of this culture within the DISTRICT's schools that permitted staff to have inappropriate, unsupervised contact with students both on and off campus.

123.    In 2013, a male football coach and teacher at WCHS (also employed by the DISTRICT Defendant) sexually assaulted two female students on DISTRICT's Defendants premises. The coach/teacher was criminally charged for this behavior, but the DISTRICT Defendants allowed him to resign.

124.    In 2024, a special education teacher at WCHS (also employed by the District Defendant) sexually assaulted a special education student on and off school premises. The teacher was criminally charged for this behavior, but upon

information and belief, the DISTRICT Defendants allowed him to resign.

125.    Later in 2024, another teacher/bus driver employed by the DISTRCT Defendant was charged criminally with Criminal Sexual Conduct. Upon information and belief, DISTRICT Defendants allowed him to resign.

126.    Upon information and belief, despite years of abuse and inappropriate conduct by Defendant DISTRICT's staff within White Cloud Schools, the DISTRICT Defendants have taken no action to prevent further abuse of their students by the staff or to otherwise implement minimum best practices to prevent such abuse and/or situations and environments that place students at risk for such abuse.

127.    DISTRICT Defendants negligently failed to properly train and supervise their staff to observe, detect, and report staff members' inappropriate sexual or other inappropriate behavior with students in order to be in compliance with Title IX and Michigan law. Ther violation and failure resulted in Defendants CANNING, DOLAN and TRICE permitting Defendants to have unsupervised contact with students, during which he sexually abused them, paving the way for Defendants J. GORMAN and S. GORMAN's abuse of students, including Plaintiff's Minor, both on and off campus.

## COUNT I - VIOLATION OF 20 U.S.C. § 1681 (TITLE IX)

## (AGAINST DEFENDANT WHITE CLOUD PUBLIC SCHOOLS)

128.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully stated herein.

129.   Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et. seq.* states:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

(Commonly referred to as "Title IX").

130.   Plaintiff's Minor was a student at the DISTRICT Defendant's school, WCHS, at the time of the ongoing assault and inappropriate conduct.

131.   Plaintiff's Minor was subject to unlawful discrimination on the basis of sex.

132.   The DISTRICT Defendant, at all times relevant, received federal financial assistance for its educational programs and activities, and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. 1681(a), et seq.

133.   At all times relevant, all Defendants were "appropriate persons" under Title IX.

134.   The DISTRICT Defendant employed and exercised control over Defendants S. GORMAN and J. GORMAN and their provisions of "teaching" and "mentoring" of minor students at all times throughout their employment with the DISTRICT.

135.   S. GORMAN and J. GORMAN's provision of "teaching" and "mentorship" to Plaintiff's Minor at all times under the supervision and control of the Defendant DISTRICT, CANNING, TRICE and DOLAN, constituted part of an education program or activity receiving Federal financial aid or assistance.

136.   Defendant S. GORMAN and J. GORMAN's inappropriate and illegal conduct, including the pursuit, coercion, harassment, manipulation, and assault of Plaintiff's Minor on the basis of sex is prohibited discrimination under Title IX.

137.   Defendants S. GORMAN and/or J. GORMAN's sexual assaults and/or illegal behavior was carried out under the guise of legitimate teaching and mentoring as part of a program offered by the Defendant DISTRICT.

138.   Reports of Defendants S. GORMAN and J. GORMAN's inappropriate and illegal conduct was made known to Defendant DISTRICT's employees who were obligated to report suspected child abuse or neglect under M.C.L. 722.623 *et. seq.*, commonly called the "Michigan Child Protection Laws."

139.   The DISTRICT Defendant, through its officials, had actual knowledge of Defendants S. GORMAN and J. GORMAN's inappropriate and illegal conduct

towards Plaintiff's Minor.

140.    The DISTRICT Defendant, through its officials, employees and/or staff, failed to carry out its duties to investigate and to take corrective action under Title IX, by immediately terminating Defendants S. GORMAN and J. GORMAN and contacting law enforcement.

141.    Defendant DISTRICT's failures to promptly and appropriately investigate, respond to, or remedy the sexual assaults after knowing that on multiple occasions during 2023-2024 school year Defendants S. GORMAN and J. GORMAN subjected Plaintiff's Minor to further harassment as well as a sexually hostile environment — effectively denying her access to educational opportunities at the DISTRICT'S schools.

142.    Plaintiff's Minor was therefore excluded from and denied the benefits of access to educational opportunities provided by the DISTRICT'S schools and such deprivation amounts to unlawful discrimination.

143.    Plaintiff's Minor was deprived of educational opportunities and benefits including, without limitation, an education free from sexual assault, manipulation or coercion.

144.    Such deprivation was severe and pervasive.

145.    Therefore, Defendant DISTRICT, through its officials, and employees, including Defendants CANNING, DOLAN and TRICE, violated Title IX by

engaging in prohibited discrimination against Plaintiff's Minor, on the basis of sex,

by the following acts and/or omissions:

a.   Failing to take appropriate remedial action following the reports of Defendants S. GORMAN and J. GORMAN's conduct towards Plaintiff's Minor and other students;

b.   Failing to conduct an immediate and appropriate investigation after receiving complaints of Defendant J. GORMAN and Defendant S. GORMAN's inappropriate behavior;

c.   Failing to implement and/or enforce mandatory reporting in violation of the Michigan Child Protection Act;

d.   Failing to train employees and staff members regarding the signs of sexual abuse and/or grooming, and reporting requirements;

e.   Failing to know the whereabouts of all faculty and students;

f.   Aiding in the perpetuation of discrimination, harassment, and abuse against male students and Plaintiff, by condoning a culture of flirtatious behavior between female students and male employees;

g.   Failing to end the sexual abuse;

h.   Any other acts or omissions that become known during litigation.

146.   Defendant DISTRICT's response was clearly unreasonable in light of

the known circumstances stated herein.

147.   Defendant DISTRICT persisted in its actions and inaction after it had

actual knowledge of the inappropriate and illegal conduct of its employee and the

ongoing harms to Plaintiff's Minor.

148.   Defendant DISTRICT's wrongful conduct denied Plaintiff's Minor access to equal opportunities to educational programs and activities at WCHS.

149.   That as a proximate cause of Defendant DISTRICT's foregoing violations of Title IX, Plaintiff's Minor sustained substantial damages as alleged in this Complaint, including and without limitation:

a.    Physical pain and suffering;

b.    Emotional and mental pain and suffering;

c.    Physical manifestations of emotional distress;

d.    Extreme fear, fright and shock;

e.    Complex post-traumatic stress;

f.    Depression and anxiety;

g.    Humiliation, embarrassment, shame, and guilt;

h.    Decreased self-confidence;

i.    Self-harm;

j.    Other past, present, and future noneconomic damages,

k.    Past, present, and future economic damages; and

l.    All other damages that become known during litigation.

150.   Plaintiff's Minor was prevented and will continue to be prevented from performing her daily activities to her fullest potential and obtaining the full enjoyment of life due to the DISTRICT Defendant's wrongful conduct as described

in this Complaint.

151.    Plaintiff's Minor will require continued treatment, therapy, and counseling to treat the mental and emotional trauma caused by the DISTRICT's wrongful conduct.

WHEREFORE, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor, R.H. respectfully prays that a judgment be entered in her favor and against Defendant, WHITE CLOUD PUBLIC SCHOOLS for the following:

   a.  Compensatory damages, including legal fees and costs, in an amount that will fully and fairly compensate the Plaintiff's Minor for the harms and losses she suffered, and continues to suffer, including physical and emotional injuries, in an amount exceeding $1,000,000;

   b.  Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

   c.  All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## COUNT II – VIOLATION OF 42 U.S.C. § 1983 – VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS – EXCESSIVE FORCE

### (AGAINST DEFENDANTS S. GORMAN and J. GORMAN)

152.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully stated herein.

153.    42 U.S.C. §1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state of territory of the District of Colombia subjects or caused to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secure by the constitution and shall be liable to the party injured in an action at law, suit or in equity, or other appropriate proceedings for redress.

154.    At all times relevant, Defendants S. GORMAN and J. GORMAN were acting under the color of state law, employed by Defendant DISTRICT, acting in the scope of their employment, and in their capacity as teachers.

155.    At all times relevant, Plaintiff's Minor had a clearly established right to be free from unreasonable searches, seizures, and excessive force, pursuant to the Fourth Amendment to the United States Constitution, which includes the right to be free from the continuous sexual assaults that occurred on Defendant DISTRICT's property.

156.    At all relevant times, Plaintiff's Minor's liberty protected by the substantive components of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, including her right to personal safety and bodily integrity, and equal protection from discrimination and harassment based on sex, were clearly established.

157.    Plaintiff's Minor further had the substantive due process right to be free from arbitrary government conduct that lacks all socially redeeming values.

158.    The sexual abuse illegal conduct and molestation committed by

Defendants S. GORMAN and J. GORMAN, which was condoned by Defendants CANNING, DOLAN and TRICE as described herein, deprived Plaintiff's Minor of the right to personal security and bodily integrity.

159.    Defendant J. GORMAN assaulted Plaintiff's Minor, a high school student in his classroom.

160.    Any reasonable person, including Defendants S. GORMAN and J. GORMAN, would know that their conduct was illegal and in violation of Plaintiff Minor's constitutional rights.

161.    Defendants S. GORMAN and J. GORMAN are not entitled to qualified immunity as the law was clearly established, their seizure of Plaintiff's Minor was objectively unlawful, and their use of force was unjustifiably excessive.

162.    Defendants S. GORMAN and J. GORMAN's conduct was, and remains extreme, outrageous, and shocks-the-conscience, subjecting them to punitive damages.

163.    Defendants S. GORMAN and J. GORMAN's wrongful and illegal conduct was a proximate cause of Plaintiff's injuries and damages including, but not limited to:

a.    Physical pain and suffering;

b.    Emotional and mental pain and suffering;

c.    Physical manifestations of emotional distress;

d.      Extreme fear, fright and shock;

e.      Complex post-traumatic stress;

f.      Depression and anxiety;

g.      Humiliation, embarrassment, shame, and guilt;

h.      Decreased self-confidence;

i.      Self-harm;

j.      Other past, present, and future noneconomic damages,

k.      Past, present, and future economic damages; and

l.      All other damages that become known during litigation.

WHEREFORE, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor,

respectfully prays that a Judgment be entered in her favor, and against Defendant,

Defendants S. GORMAN and J. GORMAN for the following:

      a.   Compensatory damages, including legal fees and costs, in an amount that will fully and fairly compensate the Plaintiff's Minor for the harms and losses she suffered, and continues to suffer, including physical and emotional injuries, in an amount exceeding $1,000,000;

      b.   Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

      c.   All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## COUNT III - VIOLATION OF 42 U.S.C. § 1983 – VIOLATION OF CIVIL RIGHTS –EQUAL PROTECTION OF LAWS UNDER THE FOURTEENTH AMENDEMENT

## (AGAINST DEFENDANTS CANNING, DOLAN, S. GORMAN and TRICE)

164.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully stated herein.

165.  At all times relevant, Defendants, CANNING, DOLAN, SARA GORMAN and TRICE were employed by the DISTRICT Defendant in their capacities as employees, educators, superintendents, principals, aides, and/or administrators, and acting under the color of state law.

166.  At all times relevant, under the substantive components of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Plaintiff's Minor had a clearly established right to personal safety and bodily integrity.

167.  The actions of the Defendants described herein which created and/or increased the risk that the Plaintiff's Minor would be sexually abused and/or molested by Defendants J. GORMAN and/or S. GORMAN on and off school grounds and outside of school hours, were all performed under the color of state law, were objectively unreasonable and performed knowingly, deliberately, and indifferently to Plaintiff's Minor and in reckless disregard for her safety.

168.  That the protections to personal safety and bodily integrity embodied

in the Fourteenth Amendment include Plaintiff's right to be free from sexual assault, abuse, harassment, coercion, by a state actor, Defendants J. GORMAN and S. GORMAN, based on being a female student at a public learning institution.

169.   The Fourteenth Amendment further protects Plaintiff's Minor from Defendants CANNING, DOLAN, S. GORMAN and TRICE's wrongful conduct.

170.   Defendants CANNING, DOLAN, S. GORMAN and TRICE's actions and/or omissions denied Plaintiff's Minor equal protection under the law.

171.   Once Defendants CANNING, DOLAN, S. GORMAN and TRICE had subjective knowledge that Defendants J. GORMAN and/or S. GORMAN's conduct was illegal or, at the very least, inappropriate towards Plaintiff's Minor, they failed to take action to prevent further harm to Plaintiff's Minor as described in detail in the Factual Allegations above.

172.   Upon information and belief, despite subjective knowledge of the wrongful and illegal conduct, Defendant CANNING had actual and/or subjective knowledge of Defendant's J. GORMAN and S. GORMAN's illegal and inappropriate conduct with Plaintiff's Minor, a student at White Cloud Public Schools. Upon information and belief, Defendants did nothing to prevent J. GORMAN and S. GORMAN's behavior, instead of reporting them immediately as required by law and/or taking any other preventative measures to keep Plaintiff's Minor and other students safe.

173.   Upon information and belief, despite subjective knowledge of the wrongful and illegal conduct, Defendant TRICE did nothing more than talk to Defendant J. GORMAN regarding Plaintiff's Minor's statements to him instead of reporting Defendant J. GORMAN and/or S. GORMAN immediately as required by law.

174.   Upon information and belief, despite subjective knowledge of the wrongful and illegal conduct, Defendant S. GORMAN did nothing to prevent Defendant J. GORMAN's assault to Plaintiff's Minor's and failed to immediately report him as required by law.

175.   Upon information and belief, despite subjective knowledge of the wrongful and illegal conduct, Defendant DOLAN did nothing to prevent Defendants S. GORMAN and J. GORMAN's assault to Plaintiff's Minor's and failed to immediately report him as required by law.

176.   Upon information and belief, Defendant S. GORMAN knew that Defendant J. GORMAN was engaging in illegal and/or inappropriate conduct with Plaintiff's Minor.

177.   Defendant CANNING had knowledge that Defendant S. GORMAN and/or J. GORMAN were engaging in illegal and/or inappropriate conduct with Plaintiff's Minor as it was reported it him.

178.   Defendants CANNING, DOLAN, S. GORMAN and TRICE knew that

their failure to report Defendants J. GORMAN and/or S. GORMAN, or otherwise act, created a substantial likelihood that Plaintiff's Minor would sustain a risk of serious harm.

179.   Despite their subjective and/or actual knowledge, Defendants CANNING, DOLAN, S. GORMAN and TRICE consciously and recklessly disregarded the substantial risk of serious and continuing harm to Plaintiff's Minor.

180.   Defendants CANNING, DOLAN, S. GORMAN and TRICE's wrongful conduct was committed with deliberate indifference to Plaintiff Minor's clearly established constitutional rights.

181.   Any reasonable superintendent, principal, teacher, behavioral-academic interventionist or administrator would have known that their failure to immediately report Defendants S. GORMAN and J. GORMAN's conduct to DISTRICT administrators and/or law enforcement was illegal, discriminatory on the basis of sex, and in violation of Plaintiff Minor's Fourteenth Amendment right to equal protection under the Constitution.

182.   At all times relevant, Defendants CANNING, DOLAN, S. GORMAN and TRICE were acting under color of law and within the scope of their employment and official duties as employees, superintendent, principal, teachers and interventionist and/or administrators employed by the DISTRICT Defendant.

183.   Defendants CANNING, DOLAN, S. GORMAN and TRICE are

therefore not entitled to qualified immunity.

184.    Defendants CANNING, DOLAN, S. GORMAN and TRICE's conduct was and remains, extreme, outrageous, and shocks-the-conscience, subjecting Defendants to punitive damages.

185.    Defendants CANNING, DOLAN, S. GORMAN and TRICE's deliberate indifference to Plaintiff Minor's constitutional rights was a proximate cause of Plaintiff Minor's injuries and damages, including, but not limited to:

a.    Physical pain and suffering;

b.    Emotional and mental pain and suffering;

c.    Physical manifestations of emotional distress;

d.    Extreme fear, fright and shock;

e.    Complex post-traumatic stress;

f.    Depression and anxiety;

g.    Humiliation, embarrassment, shame, and guilt;

h.    Decreased self-confidence;

i.    Self-harm;

j.    Other past, present, and future noneconomic damages,

k.    Past, present, and future economic damages; and

l.    All other damages that become known during litigation.

WHEREFORE, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor, R.H., respectfully prays that a Judgment be entered in their favor, and against Defendants CANNING, DOLAN, S. GORMAN and TRICE for the following:

    a. Compensatory damages, including legal fees and costs, in an amount that will fully and fairly compensate the Plaintiff's Minor for the harms and losses she suffered and continues to suffer, including physical and emotional injuries, in an amount exceeding $1,000,000;

    b. Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

    c. All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## COUNT IV - VIOLATION OF 42 U.S.C. § 1983 – FAILURE TO TRAIN AND SUPERVISE AND FOR UNCONSTITUTIONAL CUSTOMS, POLICIES, AND PRACTICES (*MONELL* CLAIM)

### (AGAINST DEFENDANT WHITE CLOUD PUBLIC SCHOOLS)

186.  Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully stated herein.

187.  Plaintiff's Minor R.H. was subjected to a deprivation of her clearly established Fourth and Fourteenth Amendment rights as described in this Complaint.

188.  Defendants CANNING, DOLAN, S. GORMAN J. GORMAN and TRICE were state actors and at all relevant times acting under the color of state law, and within the scope of their employment with the District.

189.   Plaintiff's Minor's rights to be free from sexual assault, harassment, and discrimination, and to personal safety and body integrity were clearly established by the time Plaintiff's Minor started high school.

190.   At the time of the constitutional deprivations described in this Complaint, Defendant DISTRICT failed to train and/or supervise its employees. Superintendents, teachers, interventionists, including Defendants, CANNING, DOLAN, TRICE, S. GORMAN and J. GORMAN, in the constitutional requirements for sexual discrimination, Title IX, sexual abuse, misconduct and/or abuse, reporting of same, disparate treatment of students on the basis of sex, and the fundamental contours of the Fourth and Fourteenth Amendments.

191.   The DISTRICT Defendants have the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice failed to do so with deliberate indifference.

192.   The deprivations were caused by the customs, policies, and established practices of the DISTRICT.

193.   The DISTRICT Defendants had a duty to prevent sexual assault, abuse, and molestation on its campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to the United

States Constitution and Title IX.

194.    Defendant DISTRICT's deliberate indifference to Plaintiff's Minor's constitutional rights which subjected him to violations of the Fourth and Fourteenth Amendments, is demonstrated by:

a.    Failing to take appropriate remedial action following the prior sexual abuse by other members of the WCHS or White Cloud Junior High teaching staff, which occurred on school property, during school hours;

b.    Authorizing, permitting, and encouraging their teachers including Defendant S. GORMAN and J. GORMAN to have unfettered interactions with teenage students, including Plaintiff's Minor on and off campus;

c.    Failing to train faculty and staff on proper communications with students, including but not limited to: male staff interacting with female students;

d.    Failing to provide and train staff on a "chain-of-command" for reporting suspected inappropriate conduct between staff and students;

e.    Failing to train and supervise its employees on child protection laws, inappropriate conduct between staff and students, and recognizing signs of sexual abuse and/or grooming;

f.    Failing to act by suspending or terminating J. GORMAN, or otherwise reporting him to law enforcement authorities;

g.    Failing to act by suspending or terminating S. GORMAN, or otherwise reporting him to law enforcement authorities;

h.    Allowing teachers, including Defendant J. GORMAN, to spend an inordinate amount of time with Plaintiff's Minor unsupervised;

i.    Allowing teachers, including Defendant J. GORMAN, to spend time with students alone and unsupervised in his classroom;

    j.      Allowing teachers, including Defendant's S. GORMAN and J. GORMAN, to live with students;

    k.      Allowing teachers, including Defendant's S. GORMAN and J. GORMAN, to sleep in the same bed with students;

    l.      Failing to properly question or investigate J. GORMAN when observed by other staff members and students of inappropriate conduct, such inaction constituting an implicit and/or overt ratification of this conduct;

    m.    Failing to protect Plaintiff's Minor;

    n.      Failing to know the whereabouts of all faculty and students;

    o.      Any other acts or omissions, policies, customs or practices, that become known during litigation.

195. Defendant DISTRICT through its employees, administrators, superintendent, teachers, principal and school resource officer, had subjective knowledge of the substantial risk of serious harm to Plaintiff's Minor and consciously disregarded the harm.

196. The DISTRICT Defendants' customs and deliberate indifference allowed Defendants J. GORMAN and S. GORMAN to engage in and further the abuse of Plaintiff's Minor and resulted in the deprivation of her constitutional rights directly and proximately causing her injuries.

197. A causal link exists between Defendant DISTRICT's failure to train and supervise its employees and Plaintiff's Minor's injuries, harms, and damages, such that the DISTRICT's failure was a moving force behind the constitutional violations alleged herein.

198.    Defendant DISTRICT's deliberate indifference to Plaintiff's Minor's constitutional rights was a proximate cause of Plaintiff's injuries and damages, including, but not limited to:

    a.    Physical pain and suffering;

    b.    Emotional and mental pain and suffering;

    c.    Physical manifestations of emotional distress;

    d.    Extreme fear, fright and shock;

    e.    Complex post-traumatic stress;

    f.    Depression and anxiety;

    g.    Humiliation, embarrassment, shame, and guilt;

    h.    Decreased self-confidence;

    i.    Self-harm;

    j.    Other past, present, and future noneconomic damages,

    k.    Past, present, and future economic damages; and

    l.    All other damages that become known during litigation.

WHEREFORE, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor, R.H., respectfully prays that a Judgment be entered in her favor, and against Defendant, DISTRICT for the following:

    a. Compensatory damages, including legal fees and costs, in an amount that will fully and fairly compensate the Plaintiff's Minor for the harms and losses she suffered and continues to suffer, including physical and

emotional injuries, in an amount exceeding $1,000,000;

b. Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

c. All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## COUNT V - VIOLATION OF 42 U.S.C. § 1983

### (State Created Danger)
### (AGAINST ALL DEFENDANTS)

199.    Plaintiff's Minor incorporates and realleges the preceding paragraphs as if expressly rewritten herein.

200.    Pursuant to the Fourteenth Amendment of the United States Constitution and at all times relevant hereto, Plaintiff's Minor had the clearly established right to be free from danger created and/or increased by the Defendants.

201.    At all times relevant hereto, the Defendants were acting under the color of state law and created and/or increased a state-created danger by substantially increasing the risk of harm to the Plaintiff's Minor, and in reckless disregard to Plaintiff's Minor safety, thereby increasing the risk that Plaintiff's Minor would be exposed to DEFENDANT's  J. GORMAN and S. GORMAN's private acts of sexual abuse, molestation and illegal behavior.

202.    The actions of the Defendants described herein, which created and/or

increased the risk that the Plaintiff's Minor would be sexually abused and/or molested by DEFENDANT's J. GORMAN and/or S. GORMAN at school during school hours, off school grounds outside of school hours, and were all performed under the color of state law and were objectively unreasonable and performed knowingly, deliberately, and indifferently to Plaintiffs' and in reckless disregard for their safety.

203.    The following actions taken by the Defendants created the danger and increased the risk of harm that the Plaintiff's Minor would be exposed to sexual abuse and/or molestation by Defendants J. GORMAN and/or S. GORMAN on school grounds during school hours and off school grounds and outside of school hours:

  a. Defendants permitted J. GORMAN to have unsupervised contact with Plaintiff's Minor in a classroom, despite knowing that Defendant J. GORMAN would sleep in the same bed as Plaintiff's Minor;

  b. Defendants permitted S. GORMAN and J. GORMAN to remove students off campus, including Plaintiff's Minor.

  c. Defendants permitted S. GORMAN and J. GORMAN to have unsupervised contact with Plaintiff's Minor off campus.

  d. Defendants permitted S. GORMAN and J. GORMAN to transport students, including Plaintiff's Minor, from school property.

  e. Defendants permitted S. GORMAN and J. GORMAN to live with students, including Plaintiff's Minor.

  f. Acting and failing to act as outlined in the allegations included within this Complaint, all of which said allegations are incorporated herein

by reference.

204.    These actions were performed by Defendants notwithstanding their knowledge of DEFENDANT's J. GORMAN and S. GORMAN's boundary issues and inappropriate conduct with young students such as Plaintiff's Minor.

205.    These actions specifically placed Plaintiff's Minor at risk of sexual abuse, which occurred on numerous occasions.

206.    These Defendants knew or should have known that their actions specifically endangered Plaintiff's Minor and in any event, such actions were egregious and shock the conscience.

207.    As a direct and proximate result of the reckless actions taken by these Defendants as described herein, which violate the Fourth and Fourteenth Amendments and are otherwise implemented in a manner such that constitutional violations are substantially certain and likely to occur, the Plaintiff's Minor's Fourth and Fourteenth Amendment rights were violated. Plaintiff's Minor was forced to suffer and endure extreme deprivations of their liberty, severe physical, mental, and emotional pain and suffering, all in amounts to be proven at trial.

**WHEREFORE**, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor, R.H., respectfully pray that judgment be entered in her favor against these Defendants, jointly and severally, for:

a. Compensatory damages, including legal fees and costs, in an amount that will fully and fairly

          compensate the Plaintiff's Minor for the harms and losses she suffered and continues to suffer, including physical and emotional injuries, in an amount exceeding $1,000,000;

      b. Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

      c. All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## <u>COUNT VI - SEXUAL BATTERY</u>
## (AGAINST DEFENDANT J. GORMAN)

208.   Plaintiff incorporates by reference each of the allegations contained in the previous paragraphs as though fully set forth herein.

209.   Defendant J. GORMAN sexually abused Plaintiff's Minor by digital penetration, slapping on the rear end and as stated more fully in the Factual Allegations above.

210.   Some of the abuse known to date occurred on school property at WCHS, at Defendants J. GORMAN and S. GORMAN's home and in Defendant J. GORMAN's vehicle.

211.   The abuse perpetrated upon Plaintiff's Minor by Defendant J. GORMAN, was harmful, extreme, outrageous, and offensive  causing physical injuries, and severe and permanent emotional and mental injuries and damages.

212.   Defendant J. GORMAN's sexual battery was a proximate cause of

Plaintiff's Minor's injuries and damages, including, but not limited to:

      a.     Physical pain and suffering;

      b.     Emotional and mental pain and suffering;

      c.     Physical manifestations of emotional distress;

      d.     Extreme fear, fright and shock;

      e.     Complex post-traumatic stress;

      f.     Depression and anxiety;

      g.     Humiliation, embarrassment, shame, and guilt;

      h.     Decreased self-confidence;

      i.     Self-harm;

      j.     Other past, present, and future noneconomic damages,

      k.     Past, present, and future economic damages; and

      l.     All other damages that become known during litigation.

WHEREFORE, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor, R.H., respectfully prays that a Judgment be entered in her favor, and against Defendant J. GORMAN, for the following:

      a.   Compensatory damages, including legal fees and costs, in an amount that will fully and fairly compensate the Plaintiff's Minor for the harms and losses she suffered and continues to suffer, including physical and emotional injuries, in an amount exceeding $1,000,000;

    b.  Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

    c.  All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## COUNT VII - GROSS NEGLIGENCE, WILFUL AND WANTON MISCONDUCT

## (AGAINST DEFENDANTS J. GORMAN and S. GORMAN)

213.  Plaintiff incorporates by reference each of the allegations contained in the previous paragraphs as though fully set forth herein.

214.  Defendants J. GORMAN and S. GORMAN owed Plaintiff's Minor a duty to use ordinary care to ensure her safety and freedom from excessive force, unlawful seizure, and equal protection under the law.

215.  Defendants J. GORMAN and S. GORMAN owed Plaintiff's Minor the duty to use ordinary care to equal protection of law and to be free sexual discrimination, harassment, and assault.

216.  Defendants J. GORMAN and S. GORMAN are not entitled to governmental immunity under Michigan law, M.C.L. 691.1407, *et. seq*. as her conduct amounted to gross negligence, and/or willful and wanton misconduct.

217.  Further, Defendants J. GORMAN and S. GORMAN's conduct demonstrated a willful disregard for precautions to ensure Plaintiff's Minor's safety

and created a substantial risk of serious harm.

218.   As fully set forth in the factual allegations, Defendants J. GORMAN and S. GORMAN breached their duty of care owed to Plaintiff's Minor and were grossly negligent in that her misconduct was committed with reckless disregard for Plaintiff's Minor's safety, health, and with a substantial lack of concern to whether an injury resulted.

219.   As the proximate result of Defendants J. GORMAN and S. GORMAN's gross negligence, Plaintiff's Minor suffered and will continue to suffer damages into the future, including, but not limited to:

    a.    Physical pain and suffering;

    b.    Emotional and mental pain and suffering;

    c.    Physical manifestations of emotional distress;

    d.    Extreme fear, fright and shock;

    e.    Complex post-traumatic stress;

    f.    Depression and anxiety;

    g.    Humiliation, embarrassment, shame, and guilt;

    h.    Decreased self-confidence;

    i.    Self-harm;

    j.    Other past, present, and future noneconomic damages,

    k.    Past, present, and future economic damages; and

l.      All other damages that become known during litigation.

WHEREFORE, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor

R.H., respectfully prays that a Judgment be entered in their favor, and against

Defendants J. GORMAN and S. GORMAN, for the following:

a.  Compensatory damages, including legal fees and costs, in an amount that will fully and fairly compensate the Plaintiff's Minor for the harms and losses she suffered and continues to suffer, including physical and emotional injuries, in an amount exceeding $1,000,000;

b.  Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

c.  All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## COUNT VIII – VIOLATION OF ELLIOT LARSON CIVIL RIGHTS ACT - FAILING TO PROTECT AGAINST A SEXUALLY HOSTILE EDUCATIONAL  ENVIRONMENT

### (AGAINST ALL DEFENDANTS)

220.   Plaintiff incorporates by reference each of the allegations contained in the previous paragraphs as though fully set forth herein.

221.   Defendant DISTRICT is a public institution providing a public service under the Elliot Larson Civil Rights Act ("E.L.C.R.A.), M.C.L. 37.2101, 37.2302 and 37.2401.

222.   Defendants S. GORMAN, J. GORMAN, CANNING, DOLAN and TRICE, at all relevant times were acting in their capacity as employees of

Defendant DISTRICT.

223.    Pursuant to E.L.C.R.A., an educational institution shall not discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, sex, sexual orientation, or gender identity or expression. M.C.L. 37.2402.

224.    Defendant DISTRICT's acts and omissions through its employees, directors, supervisors, and administrators, as described in the Factual Allegations, and Counts I and IV of this Complaint constitute sexual assault, discrimination, and harassment, and violated Plaintiff's Minor's rights under E.L.C.R.A. by subjecting her to sexual grooming, advances, harassment, coercion, innuendo, and sexual assault.

225.    Defendant DISTRICT was responsible for providing a safe educational environment for Plaintiff's Minor.

226.    By subjecting Plaintiff's Minor to sexual grooming, advances, harassment, coercion, innuendo, and sexual assault, DISTRICT Defendant's acts and omissions, through its employees, superintendents, teachers, faculty, resource officers, aides and administrators, created a sexually hostile environment, abusive and intimidating conditions, depriving Plaintiff's Minor of a safe, full, and equal educational learning environment.

227.  The DISTRICT Defendant is vicariously liable for the acts and omissions of its employees, superintendents, teachers, faculty, resource officers, aides and administrators, including Defendants, S. GORMAN, J. GORMAN, CANNING, DOLAN and TRICE, under the doctrine of *respondeat superior*.

228.  As the proximate result of Defendant, DISTRICT's violations of Plaintiff's civil rights under E.L.C.R.A, suffered, and will continue to suffer damages into the future, including, but not limited to:

    a.  Physical pain and suffering;

    b.  Emotional and mental pain and suffering;

    c.  Physical manifestations of emotional distress;

    d.  Extreme fear, fright and shock;

    e.  Complex post-traumatic stress;

    f.  Depression and anxiety;

    g.  Humiliation, embarrassment, shame, and guilt;

    h.  Decreased self-confidence;

    i.  Self-harm;

    j.  Other past, present, and future noneconomic damages,

    k.  Past, present, and future economic damages; and

    l.  All other damages that become known during litigation.

WHEREFORE, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor R.H., respectfully prays that a Judgment be entered in their favor, and against Defendants for the following:

    a. Compensatory damages, including legal fees and costs, in an amount that will fully and fairly compensate the Plaintiff's Minor for the harms and losses she suffered and continues to suffer, including physical and emotional injuries, in an amount exceeding $1,000,000;

    b. Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

    c. All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## COUNT IX – VIOLATION OF MICHIGAN CHILD PROTECTION LAWS - FAILURE TO REPORT

### (AGAINST DEFENDANTS DISTRICT, CANNING, DOLAN, S. GORMAN and TRICE)

229.   Plaintiff incorporates by reference each of the allegations contained in the previous paragraphs as though fully set forth herein.

230.   Under Michigan Child Protection Laws, M.C.L. 722.623(1)(a), a person who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect.

231.   Upon information and belief, Defendants CANNING, DOLAN, S.

GORMAN and TRICE are mandatory reporters under M.C.L. 722.623(1)(a).

232.   Defendants CANNING, DOLAN, S. GORMAN and TRICE had actual or subjective knowledge that Plaintiff was being abused by Defendant J. GORMAN and/or S. GORMAN.

233.   At the very least, Defendants CANNING, DOLAN, S. GORMAN and TRICE had reasonable cause to suspect that Defendants J. GORMAN and/or S. GORMAN were abusing Plaintiff's Minor thereby triggering their mandatory obligation under the law. M.C.L. 722.623(1)(a).

234.   M.C.L. 722.633 provides: "[A] person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."

235.   Defendant DISTRICT is vicariously liable for the acts and omissions of its employees, staff, teachers, faculty, resource officers, aides, administrators, including Defendants CANNING, DOLAN, S. GORMAN and TRICE under the doctrine of *respondeat superior*.

236.   As the proximate result of Defendants CANNING, DOLAN, S. GORMAN and TRICE's violation of the Michigan Child Protection Laws, Plaintiff's Minor suffered and will continue to suffer damages into the future, including, but not limited to:

   a.    Physical pain and suffering;

b.      Emotional and mental pain and suffering;

c.      Physical manifestations of emotional distress;

d.      Extreme fear, fright and shock;

e.      Complex post-traumatic stress;

f.      Depression and anxiety;

g.      Humiliation, embarrassment, shame, and guilt;

h.      Decreased self-confidence;

i.      Self-harm;

j.      Other past, present, and future noneconomic damages,

k.      Past, present, and future economic damages; and

l.      All other damages that become known during litigation.

WHEREFORE, Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor R.H., respectfully prays that a Judgment be entered in their favor, and against Defendants CANNING, DOLAN, S. GORMAN, TRICE, jointly and severally for the following:

a.  Compensatory damages, including legal fees and costs, in an amount that will fully and fairly compensate the Plaintiff's Minor for the harms and losses she suffered and continues to suffer including physical and emotional injuries, in an amount exceeding $1,000,000;

b.  Costs and reasonable attorneys' fees and interest, both pre-judgment and post-judgment; and

    c.  All such other relief to which Plaintiff is entitled and/or the Court deems equitable.

## **PRAYER FOR RELIEF**

Plaintiff prays that the Court enter Judgment for the Plaintiff, ALISA BADDIS, on behalf of Plaintiff's Minor, R.H., and against each of the Defendants and award:

    a.  Past, present, and future compensatory and exemplary damages on all claims allowable by federal and Michigan law;

    b.  Punitive  damages on all allowable claims against the individual Defendants and in an amount to be determined at trial;

    c.  Nominal damages on allowable claims, if necessary;

    d.  Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

    e.  Pre- and post-judgment interest at the lawful rate; and

    f.  Any further relief that the Court deems just and proper, and any other appropriate relief at law and equity.

Respectfully submitted,

**VAHDAT WEISMAN LAW**

BY: *_/s/ Kara E. Weisman_*
Kara Weisman (P80837)
*Attorney for Plaintiff*
17197 N. Laurel Park Dr.
Ste 500
Livonia, MI 48152
(734) 469-4994
Kara@thevwlaw.com

Dated: February 19, 2025

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

ALISA BADDIS on behalf of Minor, R.H.,

       Plaintiff,                            Case No.:
                                                Hon.

v.

WHITE CLOUD PUBLIC SCHOOLS               **JURY DEMAND**
 ED CANNING, JOSEPH GORMAN
SARA GORMAN, COURTNEY DOLAN,
and ISAIAH TRICE jointly and severally,

              Defendants.
_____/
VAHDAT WEISMAN LAW


              Defendants.
_____/
VAHDAT WEISMAN LAW
Kara Weisman (P80837)
Attorney for Plaintiff
17197 N. Laurel Park Dr., Ste 500
Livonia, MI 48152
(734) 469-4994
kara@thevwlaw.com
_____ /


**DEMAND FOR TRIAL BY JURY**

     NOW COMES Plaintiff, ALISA BADDIS on behalf of Minor R.H., by and

through her attorneys, KARA WEISMAN of VAHDAT WEISMAN LAW and

hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

**VAHDAT WEISMAN LAW**

BY: */s/ Kara E. Weisman*
Kara E. Weisman (P80837)
*Attorneys for Plaintiff*
17197 N. Laurel Park Dr. Ste 500
Livonia, MI 48152
(734) 469-4994
Kara@thevwlaw.com

Dated: February 19, 2025